We'll hear you first. Good morning. Thank you. Good morning, Your Honors. There are three erroneous orders presented here for review in this case, the last of which, the most egregious I'm going to focus on, that is the invocation of judicial estoppel when there was no factual legal basis for it. In fact, all four analytical prongs advised against it. In my argument, it can be put in one sentence, very simply. Because Mr. Ashmore clearly and repeatedly disclosed the existence, details, and procedural posture of this action to the trustee and bankruptcy judge, and because the trustee and bankruptcy judges carefully considered the action before determining to permit Ashmore to prosecute it to conclusion twice, in 2013 and 2017, Ashmore never took, and the bankruptcy court never adopted, an inconsistent position that the action did not exist. And, in fact, what — When you fill out the schedules, it wasn't on the schedule. It was on the schedule that's denominated the Statement of Financial Affairs or the SOFA. It's denominated the Statement of Financial Affairs, but it's not denominated — In the Schedule B. And the case law seems to be clear that when it is incompletely scheduled, and our argument to you on the second order is that the scheduling in the SOFA should be sufficient even for standing. But — That's all moot, right? The second order is totally moot because now you're back in control of the litigation, and this is why we don't allow interlocutory appeals, because it all washed out, right? Well, I understand. I would hope that Your Honors would actually address it because it created a lot of confusion here, and the other circuits, many of the other circuits seem to be — have clearly resolved the issue that even for standing, it's sufficient. But on judicial estoppel — Let's look at the judicial estoppel. Right. You're referring principally — is it right that we should, as the district court did, apply Third Circuit law to decide whether this counts as a misstatement? Yes. And you're relying on In re Kane. I'm relying not just on In re Kane, Your Honor. I'm relying on the fact that every decision the bankruptcy court made was made precisely with this action in mind, that there were only two decisions made in 2013, the decision to deny Mr. Ashmore's motion to dismiss the bankruptcy, which was made precisely because of the existence of the action and the fact that the trustee and the bankruptcy judge thought that it could provide a settlement to creditors. And then a few months later, in September 2013, the trustee, having investigated the action and having decided that the case was not going to settle and having not been able to find a lawyer to prosecute the case, told the district court that Mr. Ashmore could prosecute the case. He was closing the case. I understand that those are the facts. Yes. But in terms of the law that makes those facts relevant, I should think you'd be standing pretty firmly on Kane, because as I read the decision, the Third Circuit there had basically the same situation. Something was or you would perhaps say a less favorable situation than yours, because of all these other facts you're referring to. But in Kane, the action was disclosed on the SOFA, but not on Schedule B. Yes, that's true. And they held that the trustee could either have considered it scheduled or not scheduled, but fully disclosed. And the fact that the trustee investigated the claim and the action was sufficient to bar the invocation of judicial estoppel. But you don't have what was in Kane, which the judge below commented on, and that is an express statement by the trustee on the record that there had been adequate disclosure. There is no evidence in this record that the trustee of the bankruptcy court ever complained about the adequacy of the disclosure. And, in fact, in 2016, the bankruptcy court, Judge Papilia, actually found that although the action was not listed in the SOFA, in the Schedule B, it was listed in the SOFA, and it was thereafter repeatedly disclosed in the case. There was an extensive discovery. There was an extensive discussion at the 341 hearing. The only reference to this case was a lawyer saying, I have a conflict because I have a deposition in the Southern District of New York. There are two certifications by the trustee, as well as a certification by Mr. Ashmore, sworn that Mr. Ashmore disclosed and testified about the action at the 341 creditors' meeting. But even if you disregard that, Your Honor, he wrote a letter to the trustee shortly thereafter in which he enclosed the complaint and fully described the case. He then went to a hearing before Bankruptcy Judge Stern and gave a lengthy disquisition about the existence of the case, its procedural posture, and the claims. That's the June 21st of 2013 letter. And the July 23rd hearing. But on July 17th, also, that letter is made known to the creditors because it's posted on the docket of the case. Yes. And the SOFA, of course, the fact that it was listed accurately in the SOFA, is also plainly available to the creditors. And no creditor. And on July 23rd, there is extensive testimony by Mr. Ashmore before the Bankruptcy Judge at a hearing about the nature of the case. Yes. And the trustee's lawyer says to the Bankruptcy Judge, you know, if there's going to be a settlement, it looks like there's going to be a settlement. So let's not dismiss it. Let's keep the case here. And three months later, the Bankruptcy Trustee, having not found a lawyer to prosecute it, having realized and been told that it's not going to settle quickly, closes the case and tells Judge Torres that Mr. Ashmore can prosecute the case outside of the Bankruptcy Court jurisdiction. Closed the case as a no-asset case. Yes. That's right. Is that not significant? It was closed as a no-asset case. That is the most significant development, it seems to me. But it was not a no-asset case. Well. Because your client was still preserving and advancing this asset. I don't know why the trustee would do that. I don't, Judge. I don't know why the trustee would do that. But Mr. Ashmore is not the trustee and ought not to be pilloried because of the trustee's description of the case. Mr. Ashmore gave her a copy of the complaint that lists. Mr. Ashmore got a discharge as a result of that. Yes, he did. But the trustee reserved an interest in the recovery for the benefit of the creditors. That was conditioned in part on your client not claiming that he had a complete discharge. The agreement was that if there was a recovery at the end of the case, that he would not claim that it had been abandoned. But he did claim it had been abandoned. He claimed it because the trustee. I have a reason. Judge, what he did was claim for the purposes of standing that the action had been abandoned to him. And, in fact, it had been abandoned to him because the trustee had told the district judge that he could prosecute it, that he had standing to prosecute the case and the case would be held in the court jurisdiction. Well, let me – I'm very sympathetic to a lot of the things that you're saying. But I want to ask you, what is the standard of review on this judicial estoppel? Is it not abuse of discretion? It is. In Clark, and Clark Judge Jacobs and Judge Calabresi held that it was abuse of discretion. But – Well, but let me press you on something else. What concerns me about the case is that the – if we affirm, the people who are ostensibly to be protected by the proper scheduling of assets and the bankruptcy process, namely the creditors, are going to lose out on the possibility of recovery. At the same time, there is this principle of demanding integrity from bankrupts. Now, I – as I say, I hear your point that the nondisclosure of the agreement between the trustee and Mr. Ashmore to the bankruptcy judge was apparently the trustee's doing, that the somewhat peculiar arrangement was the trustee's doing. Maybe that's not attributable to Mr. Ashmore. But there is a way of looking at this record that is different, right? I mean, Mr. Ashmore didn't put it in the right place on the schedules in the first place. There is some dispute about what happened at the 341. I'm not sure on what Judge Torres was relying in rejecting the testimony of the only two people who were there, and perhaps the other side can enlighten us about that. But at least she did find that it was not really disclosed at the 341 meeting. Then there is the letter, which to some degree is kind of extracted by the trustee, who says, hey, wait, you said something about a lawsuit, tell me more. And it's only in response to that that Mr. Ashmore puts out that letter. Do we have to find that the district court was clearly erroneous in fact finding that Mr. Ashmore was not in fact entirely forthcoming in the bankruptcy proceeding? And then add into this some of the things Judge Jacobs referred to, that when it comes time for the trustee to intervene, Mr. Ashmore takes the position that he can't because there was an abandonment, which is contrary to what the deal was. Do we have to – what weight do we give to the fact that the district court did conclude as a factual matter that Mr. Ashmore had some larceny in his heart here? Well, Your Honor, you could ignore the issue about the 341. And just based on the disclosures that he made and the fact that the bankruptcy trustee and the bankruptcy court knew all about the action before they made any decision in the case, in other words, the fact that the case had been fully disclosed and that all their decisions in the case, including the 2017 abandonment, which I don't think should be lost sight of, where it goes back to the bankruptcy court, as Your Honor had suggested in Niazi, and the bankruptcy court orders an abandonment again after notice and hearing, the factual record of disclosure, both in 2013 and 2017, are sufficient in and of themselves. The heart of the argument is that in 2013, whatever – there had been full disclosure to the bankruptcy judge of the existence of the asset. There was full disclosure to the trustee. And whatever the peculiarities of what the trustee did or the bankruptcy court did, they did it and they gave that discharge to Mr. Eshmore in the full understanding that there was this lawsuit. And indeed, after the trustee had stated, correctly or not, I don't know, that there had been an $800,000 settlement offer. Yeah. My basic argument is how can – when the pro se debtor has disclosed it in the sofa, has written about it and disclosed it orally throughout the case, how can the finding below that he took the position in the bankruptcy court that the action didn't exist survive? And more important, how can the decision that the bankruptcy court somehow adopted his position that it didn't exist? There was no lawsuit when the bankruptcy court was fully aware that there was a lawsuit and was aware of it because, whether reluctantly, happily, whatever, Mr. Eshmore had testified that there was and gave all the details. And all of their decisions are based on it. The decision – Let me understand some of the financials here. Yeah. Your client went into bankruptcy with $250,000 in debts, roughly, and no assets. Well, those were the potential debts that he had. Those were the claims. No, those were not the claims because later on what happened, Your Honor, was that the case was reopened and the creditors were permitted a – Let's go back to the filing. Yeah. $250,000 worth of claims. Correct? Yes. Zero assets. Right. When the thing was reopened, there were only $50,000 or $58,000 worth of claims. Yes, because that's all the claims that all the creditors filed. Right. So it – So he only had $58,000 in debt. And what he – Somehow he managed to pay it. With what? I thought he had zero assets. Because what he did was he borrowed the money from a litigation funder. In other words, he harvested some of the assets, some of the lawsuit, and he arranged for all the creditors to be paid. So on those circumstances, how can the integrity of the bankruptcy court be upheld? Isn't it obvious that most of the creditors went away because an order was entered saying we're discharging him and he has no assets? No, because Mr. Fassman contacted two of the largest creditors in an effort to get them to augment their claims. And there's not one creditor who has ever said – They are unable to find one creditor, potential creditor, who has ever said I was disadvantaged or I didn't file a claim because of anything Mr. Ashmore did or didn't do. So no creditor was disadvantaged. So the third prong of the judicial estoppel argument hasn't been met either. Am I wrong, Mr. Herbst, that of the 200-and-something thousand dollars in listed debt on the original schedules, something like 100,000-plus were student loans that are non-dischargeable anyway? Yes. So they would not have to put in a claim. No, they wouldn't. So that leaves about half of the 200-and-something thousand. And a lot of those debts, Your Honor, were related to Mr. Ashmore's matrimonial issues, and those were resolved. Whatever they're related to. But they were resolved. Well, you're saying they're resolved. Is there anything in the record that we can rely on that indicates that what you just said, that is that Mr. Ashmore actually paid all the creditors, including the ones who did not submit claims? Well, no, I'm not saying that he paid all the creditors. I'm saying that, for example, there is evidence in the record there was an agreement with his former wife that resolved her claims, which were a substantial piece of it. So if you remove those and you remove the student loans, you're left with a small proportion of the original $250,000 claims. I'm not sure how the arithmetic exactly works out. I'm not sure how the arithmetic works either. I sort of assumed, along the lines of Judge Jacobs' question, that at least some people who were listed as creditors never filed claims. Absolutely. And I don't know what we can learn from this record as to why that happened. I think that, well, except for the items I mentioned, but what is clear from the record is that no creditor or potential creditor of the $250,000 listed ever came into the bankruptcy court and said, I have a problem with what happened and I want to file a claim. No one ever objected. Right, because whatever happened in 2013 when the no-asset discharge is made and whatever the creditors thought at that point, presumably they could have found either on the sofa or on the ladder in the docket, that there were assets in fact. But even assuming that they didn't know that, that they just thought, well, there's no assets, nothing for us to do. Subsequently, when the bankruptcy is reopened, the creditors all get notice of what's going on. Some of them file claims. Some of them, for whatever reason, do not. That's correct. And the irony of all this— And at least some of them, whichever ones are connected to the student debt, have no interest in this at all because to whatever extent they want to collect, they can collect regardless of the bankruptcy. That's right. He's not in default on those. But the irony is here, if you look at how the equities tip in this case, which is what the Clark decision says needs to be done, all the allowed creditors' claims have been arranged to be paid. So no creditor has lost a dime. There's 100 percent. When you say they are arranged to be paid, my understanding, which may be incorrect because I'm not sure I understand all the ins and outs, was that the people who filed claims are supposed to be paid out of the proceeds of the lawsuit. No. No. They were already paid because the funder of the litigation has paid them. As sent in the sum of money necessary to pay the allowed claims and the administrative costs. Okay. So if the defendant prevails here, the only person who actually loses out is Mr. Ashmore. That is correct. And that's why my basic argument to this Court is that the balance of equities tips overwhelmingly in favor of Mr. Ashmore because it gives— It would frighten me if something that I thought was an argument for Mr. Ashmore was that the people who would lose would include the creditors who filed claims. That's not so. No creditor loses a dime. No order of the Bankruptcy Court is undermined by this. In fact, the trustee and the Bankruptcy Court have said they want Mr. Ashmore to prosecute this case to conclusion. You've reserved a couple minutes, Rebuttal. Yes, Your Honor. You can use them now or you can use them later. I'll— Just to jump in on a slightly different question. Clearly, it's abuse of discretion and clearly the district court judge, whether it's larceny in the heart, as Judge Lynch mentioned, or fast and loose, the district judge was troubled. Whether rightly or wrongly, put that aside. But one of the things she cites, too, is the clean energy and the failure of your client to list that asset in his bankruptcy in any way. You call it a red herring in your brief. I guess I'd ask you, why is it a red herring? Well, it's a red herring because it doesn't have anything to do with whether this case ought to be prosecuted. But more important than that, Judge, is that Mr. — that company had lost its accreditation with HUD. Its top executives had left. Its— You don't have much time. Yeah. What I'm saying is— Is that why he didn't list it? No, because he thought it had no value. Okay. But in June of 2013, in the letter to the trustee, you wrote there appeared no end in sight in the whistleblower action. And you're, you know, basically making it sound like that's not going to have any value. Why is it any different for the clean — between clean energy and the whistleblower? Maybe I'm not being — obviously being— No, I don't think — well, first of all, I didn't write any letter in 2013 because I wasn't in the case, Your Honor. But are you talking about a letter that Mr. Ashmore wrote? Ashmore wrote to the trustee, that June letter that ends up on the docket, which is a very strong point for you, I think. But in that letter, he basically makes it sound like this whistleblower case has no end in sight. And, you know, he's kind of saying, I don't know whether it's ever going to be worth anything. No, no. I don't think that was the thrust of the letter at all. He's saying that the case is not — it doesn't appear to be — that it's going to settle right away, I think, is what it said. More a question of time, not value. Yeah. No, he never — he never represented that this case had no value. And, in fact, the complaint that he gave to the trustee had an addendum clause of at least $1.2 million. So he never — he never represented this case was worthless or, you know — and he's been fighting here for seven years on the proposition that the case is valuable. And, in fact, Judge Torres denied summary judgment on the main claim. So we're hoping that we'll be able to get a trial and prevail. Thank you. Good morning, Your Honors. May it please the Court. I also would like to confine my remarks to judicial establishment this morning. Last year, I think — I think it's been established, but that last year in Clark, this circuit held its abuse of discretion review. And that means, and I'll quote Clark, that the decision below cannot be located within the range of permissible decisions. That's a very — Where there's an error of law. That's exactly right. And abuse of discretion review requires proper application of law and not clearly — I'm doing it backwards — not clearly erroneous factual findings. And that's — I think on both — in both respects, Judge Torres was right. Didn't Judge Torres say that there's, quote, no evidence here that Ashmore disclosed this action as an asset at a 341 hearing? She did say that. She said that, right? Right. How is it that there's no evidence? If we have a certification from a trustee, we have something from the debtor? How is that no evidence? Well, let me go back and explain why she said that. First of all, she was apprised by Mr. Herbst. In his initial brief to Judge Torres, he says no creditors appeared at the 341 hearing. He says — and that's at A601. At A605, he said no creditors ever appeared at a 341 hearing. This was rescheduled. So I take her at that word. Now, she could be referring to the notion that he was — that the trustee was informed at the 341 hearing that this lawsuit existed. We don't have any qualms about saying that he informed the trustee that the lawsuit existed. He did it in writing in June. I don't have any problems with that. Well, the puzzle, though, if he told the trustee and nobody else bothered to show up at the hearing, but the trustee whose job it is, whose fiduciary duty it is to protect the interests of the creditors, says that he was aware — she was aware of it at the time, why does the fact that no creditors showed up make a difference? Well, I think, Judge Lynch, you have to go back to the basic principles of the bankruptcy system, requires notice to the court of an asset, to the court, to the trustee, and to the creditors. It's not enough to rely upon statements to the trustee. I'm not a bankruptcy expert. It would not surprise me, and maybe you know more and can tell me more, if it's not uncommon for no one to show up at a 341 hearing, no creditor to show up, where it's a relatively small bankruptcy. Well, that depends on what the creditors have been told. In this case, they were told this is a no-asset case. Well, wait, wait, wait. They were later told it was a no-asset case. I don't believe that's true. I think that they were told initially by the bankruptcy court that this is a no-asset case. Is that because of the schedules? Yes. But what about — But why — you know, I understand the point, and I understand very well, since I had to deal with this in IASI and then again in the interlocutory appeal here, that if we're talking about is there an abandonment as a matter of law, the failure to list something on the Schedule B is important. At the same time, as the Third Circuit found in Kane, if particularly a pro se bankrupt lists on the papers that are filed but puts in the wrong place the existence of a lawsuit, it's a little hard for me to understand how you can just say that the creditors have no knowledge of this. Creditors only look at one page of the filings. Your Honor — They're not required to look at the rest. Your Honor, I think you're reading the disclosure obligation very narrowly here. It seems to me, and Judge Jacobs, you said this in BPP Illinois two years ago, that if someone attempts to obtain a claim that's not been disclosed properly, and I know that that's the question here, they obtain an unfair advantage over the creditors. It's not just a question here, I would say, Judge Lynch, of did he put it on Schedule B, assets and liabilities. If you look at the summary of schedules, the summary of schedules says, and all you have to do is look at it, I have $2,840, this is A86, I have $2,800 in assets, $300,000 in liability. He says this multiple times throughout the petition. He says I have less than $50,000 in assets. And if you are a creditor, you look at that, you get a letter from or notice from the court with a filing that says, this is a no-asset case, don't file proofs of claim. There's no — people do not come to the 341 meeting, and it's not disclosed. Fair enough. Is the answer, though, that that is not curable? In other words — Oh, no. Subsequently, there is very fulsome disclosure, as I read it, in the June letter. And that letter is put on the docket. Then there is testimony before the bankruptcy court. So at that point, both the bankruptcy court and the trustee are fully aware. Let's assume that it's not — that's not enough because even though it's there on the docket for the creditors, the creditors weren't properly made aware. Let's assume that it is at Mr. Ashmore's door that the bankruptcy court, for whatever reason, knowing all those facts, still calls it a no-asset bankruptcy. Let's assume that it's Mr. Ashmore's fault that the trustee has this side agreement that doesn't quite get disclosed. Nevertheless, thereafter, the whole thing is reopened, and the creditors are given notice of everything that happens and are invited to file claims. Four years after the fact. Four years after the fact. Right. In time — in time that everyone who needs to be made whole is in a position to be made whole. Your Honor, I don't think that that's even — I don't think that's fair. For this reason, you're told twice in 2013 this is a no-asset case. During the penance — Excuse me, but then you're told it's being reopened because it turns out that wasn't so. Four years later. Okay, fine. Okay. Now what happens? Well, wait a second. I was told four years ago there's a no-asset case, so I don't need to pay attention to the fact that now there are assets. Well, of course that happens. When you talk about the bankruptcy process, when you talk about claims, for example, his claims include New York City parking tickets. I mean, he was very careful in going through Schedule F and saying, I owe all of these people money. You would take all of those small debts and you were told, I don't — there are no assets in this case. You don't sit around and say, all right, four years later I get a notice and I look and say, well, wait a minute. What did this guy owe us? We wrote off those debts. That's why — and, Judge Jacobs, you said this, and I'll read what you said in BPP Illinois, and I'm going to quote, BPP's assertion of the undisclosed claim now would allow it an unfair advantage at the expense of its former creditors who had a right to consider the claims during the bankruptcy proceeding, not when it was reopened four years later, but during the bankruptcy proceeding. Why is that? Judge Jacobs also wrote, though, that BPP's schedule of its assets, comma, including legal claims, which would be the SOFA attachment, never listed a claim that was at issue in his opinion. That's not the case here, is it? Well, the SOFA does mention this in an oblique fashion. That's exactly — Oblique? Yes. It names the debtor as the plaintiff in an action with, I think, the case number? It does. And the court? How is that oblique? Well, wait, wait. Judge Hall, wait one second. Sure. Here's what happens. So let me answer that because it's something that Judge Lynch raised as well. Here's the sequence of what goes on here. There is a scheduled 341 meeting that's supposed to take place in May. No creditors appeared, as Mr. Herbst — That's their choice. They got notice. Yes. They did get notice of that. Nobody shows up. Right? On June 20th, okay, a month later, the trustee sends a letter to Mr. Ashmore requesting that he provide an explanation as to the intervening matters that require dismissal. Right? She's not going to write that if this was disclosed at the meeting, but let's put that on the side. Ashmore then sends a letter to the trustee. The trustee's counsel then says to the bankruptcy court a month later, it now appears that there is a substantial asset here. I mean, I don't understand why that's adequate disclosure. Look, this Court and others — Let me back up to that because here's another sort of peculiarity about this case. What Mr. Ashmore is doing at that point is trying to get out of the bankruptcy proceeding. He's asking — he says — And I assume that the intervening development is the — But put that to one side. Whatever the issue is, whatever he's now thinking, he says, I don't want to be bankrupt anymore. I want to go ahead and do whatever I'm going to do to be able to pay my creditors. I want to bail out of this. How is that? And then the trustee says, no, no, no, we want to keep that asset that we now know about and use it for the benefit of the creditors. But I'm having trouble understanding why then, when the district court says, no, I'm not dismissing this, I'm going to leave this in the hands of the trustee, why is Mr. Ashmore taking a position — to be construed as taking a position, I want a discharge in bankruptcy and I have no lawsuit. And the conclusion is he gets what he wants, a discharge in bankruptcy, after he's falsely represented that he has no lawsuit. When he's told the bankruptcy judge, I have a lawsuit and please let me — I don't want a discharge in bankruptcy. Well, let me explain. He explains in a moment of candor. He explains to the bankruptcy judge on the record and sworn testimony why he wanted the lawsuit. This is A195, and I'm going to quote, I don't want to forego my attorney's abilities to litigate this in my best interest. He wants to keep it for himself. Yes, he does. He wants to — he thinks this lawsuit is worth enough money to cover his debts and still make money for himself. And he's concerned that the bankruptcy trustee is likely to sell it out at the cheapest level and the quickest level to pay off the people that the trustee is worried about. It's not his, though. And the bankruptcy court says, you know, if that happens, you can come back to me and object to what the trustee wants to do to protect your own interests, so I'm not going to — Judge, it's not his at that point. It's part of the estate. It would be his if the bankruptcy is withdrawn, which is what he wants. Well, of course. He could, but the judge didn't let him do that. Stern said it's not in the best interest of the estate. It's within the estate at that point. The creditors — look, this is a classic case where the creditors don't know anything about this. They're told — Let me in on a technical matter that bears exactly on what you're saying. Of course, Your Honor. If the suit had been listed on the Schedule B, would the Schedule B naturally require that it be estimated, the value of it be estimated? Yes, Your Honor. And it would reflect what the value of it was? Yes, Your Honor. It could be hundreds of thousands. Well, it's in a damnum of $1.2 million, which dwarfs anything that he reported, right? Was this lawsuit listed by name and docket number on the SOFA? It was. It was? Yes. Was there an estimated value? No, there was not. It's just listed as 104, and frankly, if you look at the SOFA, I've forgotten what page, there are a bunch of lines. It's very hard to figure out what's what in that. Well, look, all forms are complicated. The question is, did the SOFA provide a space for estimating the value? No, it does not. It does not. And it was not provided? It was not provided, and the schedules are very clear, and that's the reason. Look, 521A of the Bankruptcy Code is very clear. You have to file a schedule of assets and liabilities, a schedule of income and something else, and third, a statement of financial affairs. Those are different things. Why is it so clear that they've been amended to specifically state in Schedule B list lawsuits? I think is how it got there. Well, you know, I understand that, but let me go back. Schedule B is amended. It's not just that they happened to clean up something that is making more explicit something that was implicit. There are cases all over the country raising exactly this issue, right? There are cases in several circuits that raise this problem. That's right. Have any of them held that something that is disclosed on the SOFA and not disclosed on Schedule B leads to a finding of judicial estoppel? There are very few cases that say something like that. I'm not sure there are any. I'm not sure there are any, but there are a few that say the opposite, including the Third Circuit one and Third Circuit law. In what case, Your Honor? In Kane. Oh, in Kane it's a different case, though, because in Kane, here's what happened in Kane. Putting aside the question of abandonment, in Kane, after the 341 meeting, the trustee in Kane filed a letter of assets that informed the creditors that assets had been discovered and requested proofs of claim. That's the trustee when she or he, I can't remember which it is. That happened here as well. It did not then. It happened four years later, after this litigation, after Judge Lynch, after the lawsuit. Well, the question is, if he does file the letter that talks about the lawsuit, it doesn't ask for claims to be filed, but it says there's this lawsuit, here's the facts about it. It says that, and if you had perspicacious creditors who were going to go beyond the schedules, go beyond advice by the bankruptcy court that there are no assets here, and are going to say, okay, so I want to know everything about this particular guy. Even though there's no money in it. Even though there's no money in it, and there's no mention of. . . And that's the point about the four years later. By the way, how would someone estimate the value of this lawsuit as of the time of the bankruptcy filing? I think you just. . . $1.2 million, because that's what I asked for? I think it's the ad damnum. I think that the creditors are entitled to. . . Look at that. I mean, look, if they're going to look at Mr. Ashmore's letter pursuant to your statement. . . Yeah, that's all they'd see. Yeah, all they'd see is that. $1.2 million in an asset that hasn't been disclosed. And they're entitled to notice of that during the bankruptcy. And I want to say. . . The people who are going to benefit from this, of course, are your clients, who have not been defrauded in any way, have not been disadvantaged in some way by this, and are getting out from under a lawsuit which has at least enough merit that it survived summary judgment, and that at least somebody thinks there was a substantial settlement offer in. I don't know that we can rely on that or that we know what that fact is. But you guys get off not having to face Mr. Ashmore's lawsuit. The creditors have either all been made whole, or if they haven't, then they're the ones who filed the claims are the ones who are disadvantaged by this. That's the outcome that we. . . I don't think it is. I think here's the flaw in that reasoning, which is we first raised these issues. When Proskauer got involved in the case, we raised these issues. I called my friend, Mr. Herbst, who I've known for many years, and I said, did you tell the trustee about the settlement conferences we've been having? He was somewhat cagey. So I wrote a letter to the trustee, and I said to Mr. Herbst, I'm going to tell her what's going on. Don't you think you have an obligation to tell her what's going on? He said, so I wrote a letter to her. It's in the record, and I said. . . All of this is very much not in the record. The letter is in the record. I understand that. But what prompted the letter doesn't really matter, especially from the point of view of the creditors. Well, from the point of view of the creditors, and, Your Honor, that's exactly right. And I think you have to look at this from the point of view of the creditors. If what you said in BPP Illinois is to have any meeting, the creditors have to be informed of assets, truthful, complete, accurate statement of assets during the bankruptcy proceeding so that they can make decisions about this. And let me go back and end with one mention here, which is this letter agreement with the trustee, which was never disclosed to the bankruptcy court. It would have been the trustee's obligation under Rule 9019A, wouldn't it? 9019A. The motion by a trustee. It's not Mr. Ashmore's duty to file it. It was the trustee's. It was the trustee's duty not to enter into something like this in the first place. Look, the judge has said. . . Mr. Ashmore is going to lose his lawsuit against your client because the trustee maybe didn't do what she should have done in this case. Look. It's his fault. It is his fault in this sense, and that is that letter should have been disclosed at the time of the bankruptcy. This is one of many things that was done wrong in this bankruptcy proceeding. No notice, not telling the creditors of the lawsuit. This was all hidden under the table. That's why 9019 exists, is to prevent a trustee from doing this, and this is also critically important for the creditors. Why is this Ashmore's fault? If Ashmore tells the trustee, the trustee says, okay, here's what we can do. We can make this deal. And they make this deal, and the trustee fails. First of all, I think shouldn't have made the deal. I agree with you there. And secondly, should at least have disclosed whatever happened to the bankruptcy court. I think the question was, why is Ashmore responsible for that? Well, if this were all, that's fine. But, you know, Judge Torres goes back, and she goes through a whole litany of Mr. Ashmore's misconduct between hiding this, not amending his petition for four years, not disclosing Clean Edison, all of these things that she said are all incidents or evidence or consistent with an intent to conceal. All of those things are in the record. Look, any one of these standing alone, maybe we wouldn't be here. If he had amended his petition when it was disclosed to him that this was an asset, as he should have done, as the courts that say no judicial estoppel, all of those cases, the petitioner, the debtor amends his or her petition at the time. I mean, here he didn't do any of that stuff. And that's why Judge Torres ---- He was amended at the very end of proceedings. Four years. No, not even at the end of the bankruptcy proceedings. It had to be reopened. And it was reopened over his objection, after Your Honor wrote the opinion that said we have no jurisdiction over this lawsuit. Only after that does Mr. Ashmore say, oh, I better disclose to the creditors that I have an asset here. And I also have my Clean Edison claim, which I forgot to throw in somewhere. Can I just ---- Please. I'm sorry. A little question. Sure. Assuming this case went back, the appellant has appealed from the 2016 order on this standing question. You've argued it's moot. It certainly looks moot. I just want to be sure. If you think it's moot, that means you won't ever raise that ruling in any proceedings at the district court if it went back. In other words, in closing argument, ask for judicial notice of the ruling in any way, use it at a trial or other proceeding. Would that be a fair assumption when you argue it's moot? I think it is moot as a legal question. I think that if Mr. Herbst, if we go back and he wants to file a motion in limine, and I'm barred from saying anything about it as he knows how to protect himself at trial, we'll deal with that then. That's not what you meant by moot. Yeah, no. I mean, it's moot for the purposes of this appeal, I think. I think that that's the question. Thank you very much. Mr. Herbst. Thank you very much, Your Honor. I would just like to say with respect to the letter agreement, Mr. Ashmore didn't conceal it. He disclosed it to Mr. Fassman's predecessor in discovery in this case. He disclosed that letter agreement and disclosed the fact that it had never been filed on the record of the bankruptcy court. For two years, they knew everything about this, and they acquiesced in the abandonment. They knew. They knew. They knew. The real question is, in terms of administering the bankruptcy system, in terms of assuring candid and open disclosure so people know what's what and what's available, whether to hire lawyers, whether to follow a suit, and so on, the question is whether what the district court concluded were machinations by your client should prevent you from pursuing this claim. And we have put in our reply brief at pages 7 to 13 all the reasons why the district court's assertions or suggestions of machinations are untrue and are a distortion of the record. I don't want to take my remaining minute to recite them, but they're there. I do want to say that the evaluation of the assets at zero in the bankruptcy petition is something that was automatically populated by the software. If he had listed this lawsuit at the time, the value of the lawsuit at the time of the filing of the petition, he would have had to have said undetermined. And undetermined would have had a zero valuation. It still would have been valued at zero to $50,000. And the closing that the trustee put in the bankruptcy file didn't just say it's a no-asset case. He said there are no assets, no property available for distribution. That's a little different. And there is, to answer Judge Lynch's question, there is no case in this entire country in which someone who disclosed the asset in the SOFA wrote a letter. That's why we turned the lights on here. I mean, there may be no lawsuit yet. Right, in which judicial estoppel was applied. There's not one. And I'm glad Mr. Fassman conceded that fact. There isn't one. And there are six circuits that have essentially held that you can't apply. There's no point in looking at the complicated bankruptcy proceedings in six other cases. The question is whether this district judge concluding that your client manipulated things in order to get out from under $200,000. How can you accuse a pro se debtor of trying to conceal the asset when he lists it accurately in the SOFA? If he was going to conceal it or intended to conceal it, why would he list it as an employment claim, employment lawsuit in the SOFA with the right docket number in the court? What you said a moment ago, you said that if he had listed it in the Schedule B, it would have been listed as having a zero value. Yes, it would have been automatically populated by the bankruptcy petition software as zero. He would have listed it as undetermined in the Schedule B. It would not have changed anything. The fundamental defect in both the 2016 and 2018 orders below is the hyper-technical argument that a pro se debtor who discloses the asset, the lawsuit fully in the SOFA and doesn't list it in the Schedule B because it doesn't appear to him that the two definitions, or the two places you could put it there apply to lawsuits, that to penalize him and throw out his case because of that exalts the form of the disclosure over the substance of the disclosure. Mr. Ashmore disclosed it all to the trustee and the bankruptcy court. They knew everything about it in all of the critical decisions that were made in this case. Thank you. Thank you both. Thank you very much, Your Honor.